THERMOSEAL PRODUCTS, Inc. et al. v. LARUS & BRO. CO., Inc.

No. 6491.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 6, 1953.

Decided March 16, 1953.

George Cochran Doub, Baltimore, Md., and William D. Hall, Washington, D. C. (William M. Blackwell, Richmond, Va., on the brief), for appellants.

Franklin M. Warden, Chicago, Ill. (A. Yates Dowell, Washington, D. C., and M. Wallace Moncure, Jr., Richmond, Va., on the brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This suit for patent infringement is based on Claims 6, 8 and 11 of United States Patent No. 2,373,285 issued on April 10, 1945 to Carl A. Baer on an application filed March 31, 1939. The patent relates to a tobacco pouch used in the packaging of tobacco by the manufacturer which will preserve the odor and taste of the constituents of the tobacco in fresh condition.

The pouch serves as a container in which the tobacco is sold, and also as a receptacle for the use of the purchaser during the period of consumption. It is in the form of a hermetically sealed envelope of sheet material of which the side edges are permanently sealed and the mouth is superficially sealed, so that it may be readily opened without destroying or defacing the material. The result is accomplished by using a film-like material, free from tackiness at normal temperatures, but having such thermoplastic cohesive properties that contiguous portions can be bonded together either permanently or superficially by the application of varying degrees of heat and pressure.

The container is formed by folding a blank of sheet material, the side edges are caused to cohere by the application of sufficient pressure at a temperature sufficiently high to create a permanent union; and contiguous portions of the blank, which form the mouth of the pouch, are subjected to sufficient pressure at a temperature lower than that which causes a permanent union so that they are superficially sealed in such a way as to be manually separable to give access to the contents without injury to the material. In other words, the sides are permanently sealed by the application of relatively high temperature and low pressure while the mouth is superficially sealed by the application of relatively lower temperature but higher pressure than is required to cause the permanent seal of the sides.

These features of the patent are described in Claim 11 as follows:

"An hermetically sealed envelope of sheet material completely enclosing a space for the storage of commodities such as tobacco, contiguous portions thereof bordering said space being film-like and fabricated of material free from tackiness at normal atmospheric temperatures and having such thermoplastic cohesive properties that they may be selectively bonded together either permanently or superficially by the application of varying degrees of heat and pressure, selected registering areas of the contiguous portions of said sheet material bordering said storage space being bonded together so as to form a permanent hermetic seal by the application of pressure while said areas are heated to a temperature sufficiently high to cause cohesion and

permanent union thereof, the remaining areas of said portions being bonded together so as to form a separable superficial hermetic seal for the envelope by the application of pressure greater than the pressure utilized when said cohesion and permanent union of the film-like portions is being effected, applied at a temperature below that to which said film-like portions are raised when said permanent union is being effected, whereby said portions may be manually separated without injury to either to permit access to the material storage space."

The patented article was designed to cure the defects of the tobacco pouches previously in common use. In 1938 two major types were used in the United States for pipe tobacco—a metal container and a soft paper package made of one or two sheets of paper or paper and foil. The former was heavy in shipping, was hard and bulky, would not admit the pipe for filling, and did not retain the moisture and aroma of the contents; and the latter also failed to preserve the moisture and aroma of the tobacco. The new pouch met these defects and on this account was adopted by the defendant, Larus and Bro. Co., Inc. of Richmond, Virginia, a manufacturer of pipe tobacco widely known as Edgeworth in the trade. In August, 1938, prior to the application for the patent, a corporation known as North American Containers, Inc. was organized under the laws of New York to market a tobacco pouch known as the Yeates pouch which was covered by United States Patent No. 1,992,152 issued in 1935. Carl A. Baer, the inventor of the patent in suit, was made vice president in charge of sales; but shortly thereafter he produced his pouch and it was substituted for the Yeates container since it proved to possess superior qualities. The Baer pouch was composed of thermoplastic material, i. e., aluminum foil and pliofilm, and was manufactured for North American by Reynolds Metal Company of Virginia. In October, 1938 Baer displayed his pouch to Larus and sold it trial orders, and in June, 1938 arranged on behalf of North American to furnish Larus a minimum of 21,000,000 pouches in twelve months to be delivered at the rate of 50,000 per day. The new pouch proved to be commercially successful and virtually superseded the tin containers which Larus previously used. By January, 1946 Larus was using more than 3,000,000 pouches per month. They were first manufactured and delivered to Larus by Reynolds and later by the Shellmar Products Company of Mt. Vernon, Ohio. Larus filled the pouches with tobacco and superficially sealed them at the mouth in the manner above described.

Baer's connection with North American Containers was terminated in September, 1939 because of personal disagreements with officials of the company; but North American continued to supply the pouches to Larus until 1940. Thereafter the manufacture of the pouches has been in the hands of the Shellmar Products Company which has continued to supply the pouches to Larus until the present day. Neither Shellmar nor Larus has a license under the patent.

The Baer pouch, as first supplied by Reynolds and later by Shellmar, was made of aluminum foil and pliofilm, in accordance with the disclosures of the patent. In 1942 it was changed in certain respects on account of a serious shortage in these materials due to the war, and a lacquer coated cellophane was substituted for pliofilm and glassine paper was substituted for aluminum foil. In addition Shellmar introduced a foldover of the side edges of the pouch since the elimination of pliofilm and the substitution of cellophane resulted in the loss of sealing strength in the edges of the pouch. Infringement of the patent, however, occurred not only with respect to the pouches made by the manufacturers prior to 1942, but also with respect to those subsequently produced. The substituted materials performed the same function as those originally used, although somewhat less efficiently. The specifications of the patent disclose generally the use of a sheet or layer of thermoplastic material of such characteristics that juxtaposed surfaces may be joined by merger of the material to form a permanent bond by the application of relatively high temperature and rela-

tively low pressure, or to form a superficial bond by the application of relatively low temperature and relatively high pressure; and the patent specifically designates as suitable materials for these purposes not only pliofilm and aluminum foil but also cellophane, glassine papers, as well as other substances.

The decision turns on the validity of the patent in view of the disclosures of prior patents, particularly the Yeates patent of 1935 and the Moore patent No. 2,149,030 which was issued on February 28, 1939 upon an application filed August 12, 1936. Prior to the development of the Baer pouch the pouch described in the Yeates patent had been made and sold in Canada in an effort to overcome the disadvantages of the tin can and soft paper package containers. It was made of a single rectangular sheet or blank of crepe paper laminated to annealed aluminum foil with a tacky rubber coating on the inside surface of the foil. It was formed by folding the bottom portion of the blank upward and the side seams were welded together substantially permanently by use of a knurled instrument heated to 400 degrees Fahrenheit. The mouth of the pouch was sealed by pressing the thumb nail across the surface without the application of heat or substantial pressure. North American Container, Inc. was formed to market this pouch in the United States; but as we have seen, this plan was abandoned when Baer produced a pouch which met more satisfactorily the requirements of the business. Baer substituted pliofilm for the inner liner of Yeates and used heat and pressure to close the mouth. Although he produced a superior article, it is obvious that his work was aided by the Yeates disclosure.

The Moore patent seems to us to show more clearly that the Baer structure lacks the quality of invention. In Moore the pouch is made from a blank of flexible material, such as a sheet of cellulose, combined with moisture proofing compositions, with a closing flap of like material extending from the open end of the pocket of the pouch. The bottom portion of the blank is folded up to form the container and side flaps are folded over it as in the Larus pouch. The blank is coated on the inside with thermoplastic lacquer and on the outside with a high gloss moisture proof lacquer which has an affinity from the inner coat. The end edges and side seam flaps are pressed together with sufficient heat, such as by heated clamping irons, to activate the adhesive film and weld the edges together.

In filling the pocket thus formed sufficient vacant space is left at the mouth to permit the opposed edges to be pressed into engagement; and the closing flap is wrapped around the mouth and brought into engagement with the sides with the application of pressure and heat. The edges of the closing flap are secured so as to eliminate danger of injury to the flap by tearing. In one form the mouth of the package is not sealed, so as facilitate the opening, the contents being kept within by the closing flap which, being sealed in the manner described may be peeled from the outer wall of the pocket in such a way that the welded surfaces are only slightly defaced and the utility of the package while in use is not impaired. In another form the edges of the mouth are heated and adhesively secured to one another by the use of thermoplastic lacquer coating applied to the inner surface of the blank; and in this form the closing flap need not be sealed to the outer wall until the seal at the mouth has been broken.

In view of these teachings of the prior art, the Baer structure cannot be held to rise to the dignity of invention. They clearly showed the use of blanks of flexible and adhesive material to be folded and sealed by the application of varying degrees of heat and pressure so as to form a container that would preserve the desirable qualities of the tobacco. It is noticeable that the Moore patent suggested the closing of the pouch by seals which may be broken without seriously defacing the material or impairing the utility of the pouch. Baer put these suggestions into practical form and by the use of pliofilm, not available to his predecessors, produced a superior article which has met great success; but we do not think that the use of varying degrees of heat and pressure to form permanent or

superficial seals in the manner described, which constitutes the gist of his disclosure, required more ingenuity than is possessed by one skilled in the art.

The judgment of the District Court is Affirmed.